WOOD RIVER AREA DEVELOPMENT CORPORATION, on Behalf of Itself and Other Persons and Corporations Similarly Situated, Plaintiffs-Appellees, v. GERMANIA FEDERAL SAVINGS AND LOAN ASSOCIATION, Defendant-Appellee (Marvin Rochleau *et al.*, Objecting Class Members, Plaintiffs-Appellants).

Fifth District   No. 5—88—0297

Opinion filed June 1, 1990.

Edward T. McCarthy, of Edwardsville, for appellants Donald G. Soffer and Pearl Soffer.

L. James Struif, of Alton, for appellants Marvin Rochleau and Doris Rochleau.

Steven N. Mottaz, of Thomas, Mottaz, Eastman & Sherwood, of Alton, and Robert M. Lucy and Mark S. Deiermann, both of Bryan, Cave, McPheeters & McRoberts, of St. Louis, Missouri, for appellee Germania Federal Savings and Loan Association.

John Dale Stobbs and James S. Sinclair, both of Stobbs & Sinclair, of Alton, for appelle Wood River Area Development Corporation.

JUSTICE HOWERTON delivered the opinion of the court:
"Dragged out of the litigative attic at half-century intervals to deal with exotic cases of traveling preachers and bankrupt fraternal lodges, the class suit, as it had come to be called, was clearly good for something, even if no one could quite figure out what." Yeazell, *From Group Litigation to Class Action, Part II: Interest, Class, and Representation*, 27 UCLA L. Rev. 1067, 1098 (1980).

Of course, class actions are good for those cases in which they are appropriate; indeed, the issue here is whether a class action is appropriate in this case.

There is, however, a most crucial distinction between a class suit and a suit where numerous parties are joined for trial. In the class suit, each class member gives up the right to conduct and control his

own case, even though each class member is bound by the outcome, bound without his day in court. In contrast, where parties have been joined, each party conducts and controls his own case, and the outcome binds no one else. This is no small difference, and this difference should always be kept in mind in deciding between certifying a class on the one hand, or joining parties, on the other: "A class suit works best when persons are clothed in a sort of anonymity and lost in the crowd. When they take on significant characteristics as individuals, they had better be in court." Z. Chafee, Some Problems of Equity 215 (1950) (hereinafter Chafee).

We hold that 21 members do not render this proposed class "so numerous that joinder of all members is impracticable" (Ill. Rev. Stat. 1987, ch. 110, par. 2—801(1)), and reverse and remand for decertification as well as for further proceedings.

Wood River Area Development Corporation (Wood River) filed a multicount complaint against Germania Federal Savings and Loan Association (Germania), including a class-action count which alleged that Wood River was 1 of 21 commercial borrowers that had signed loan agreements with Germania by which Germania unilaterally was allowed to raise interest rates.

The circuit court of Madison County certified the class; three members opted out.

Wood River and Germania negotiated a proposed settlement that would bind all class members, including plaintiffs, Donald G. Soffer, Pearl Soffer, Marvin Rochleau, and Doris Rochleau.

Plaintiffs appeared at the settlement hearing and objected to the settlement.

The Soffers not only objected to the settlement, but also objected to being members of the class, and petitioned to intervene individually.

The Rochleaus asked for a continuance, moved to be excluded from the class, moved for decertification of the class, and objected to the proposed settlement as being unfair.

All motions by the Soffers and the Rochleaus were denied, and the circuit court entered judgment on the settlement of the class action claim.

On appeal, numerous issues are raised, but we address only the issue of class certification, as it is dispositive of the entire appeal.

I

THE HISTORY OF CLASS ACTION PRACTICE

The class action is a seventeenth-century invention created by En-

glish chancery courts to cope with disputes between such groups as rural tenants and landlords, and parishioners and parsons. (See, *e.g.*, *How v. Tenants of Bromsgrove* (1681), 1 Vern. 22, 23 Eng. Rep. 277; *Brown v. Vermuden* (1676), 1 Ch. Cas. 272, 22 Eng. Rep. 796.) Because each tenant or parishioner had a similar interest at stake, it was economical to settle common questions of law and fact in a single chancery suit. Further, because many were often people of small means, they welcomed the opportunity to pool their resources and allow their trusted leaders to champion their cause. In these class-action case precursors, the parties were interested in a single piece of property, or the tithe, or the village common. English judges then slid easily from the church and the village common to the joint-stock company and the financial syndicate, extending the rules to include them. Still, the class action was one that involved a multitude, each with a common interest. Chafee, at 201-02, 212.

Imported to the United States, the class action was used in Federal courts for much the same purposes.

Justice Douglas, joined by Justices Brennan and Marshall in a partially dissenting opinion, perhaps said best the true purpose of class actions, when he said:

"I think in our society that is growing in complexity there are bound to be innumerable people in common disasters, calamities, or ventures who would go begging for justice without the class action but who could with all regard to due process be protected by it. ***

The class action is one of the few legal remedies the small claimant has against those who command the status quo. I would strengthen his hand with the view of creating a system of law that dispenses justice to the lowly as well as to those liberally endowed with power and wealth." *Eisen v. Carlisle & Jacquelin* (1974), 417 U.S. 156, 185-86, 40 L. Ed. 2d 732, 753, 94 S. Ct. 2140, 2156-57 (Douglas, J., dissenting).

No matter how refined, how revised, or how evolved this flashy import becomes, the goal of the class action remains the same—justice for the lowly, the tenants, the parishioners, the multitudes.

## II

### CLASS ACTION PRACTICE IN ILLINOIS

■■ Class actions in Illinois are governed by section 2—801 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—801) (formerly section 57.2 of the Civil Practice Act). It provides:

"§2—801. Prerequisites for the maintenance of a class action. An action may be maintained as a class action in any court of this State and a party may sue or be sued as a representative party of the class only if the court finds:

(1) The class is so numerous that joinder of all members is impracticable.

(2) There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members.

(3) The representative parties will fairly and adequately protect the interest of the class.

(4) The class action is an appropriate method for the fair and efficient adjudication of the controversy." Ill. Rev. Stat. 1987, ch. 110, par. 2—801.

If the prerequisites of section 2—801 are not satisfied, a class action is not proper. *Kulins v. Malco, A Microdot Co.* (1984), 121 Ill. App. 3d 520, 459 N.E.2d 1038.

The dispositive question is whether 21 members suffice to make a class.

The circuit court found the class to be made up of 21 commercial borrowers. After the class was certified and notice was given, three members opted out.[1]

Wood River has not offered, nor has our research led us to, any Illinois case wherein a class as small as 21 has been found "so numerous" so as to satisfy section 2—801(1).

In contrast, however, a leading Illinois case has held that 46 members were not enough to maintain a class action. (*Board of Education of Community Unit School District 201-U v. Pomeroy* (1977), 47 Ill. App. 3d 468, 362 N.E.2d 55.) *Pomeroy* says that " '[r]epresentation by a few on behalf of many as a device to conclude the rights of the absent parties must be regarded by the courts as conduct requiring close and vigilant scrutiny.' " (*Pomeroy,* 47 Ill. App. 3d at 472, 362 N.E.2d at 59, quoting *Reardon v. Ford Motor Co.* (1972), 7 Ill. App. 3d 338, 341, 287 N.E.2d 519, 522.) *Pomeroy* considers class size, convenient access to the courts by each class member and whether the claims are based on separate transactions all as factors in assessing the propriety of certifying a class. This implies pretty clearly that

---

[1]Although there were originally 23 loans containing the complained-of interest-rate provision, four borrowers had more than one loan. Additionally, some of the loans were paid off prior to class certification. For the purposes of this appeal, we will nonetheless accept the finding of the circuit court that the class was composed of 21 commercial borrowers.

there is no number magic to the creation of a class. No other Illinois case has been found that deals with relatively small numbers.

Because the language of section 2—801(1) is taken verbatim from Federal Rule of Civil Procedure 23(a)(1), and because no Illinois case has been found, Federal case law may be considered as exegetic in deciding whether 21 are so numerous that joinder is impracticable under the Illinois statute. Ill. Ann. Stat., ch. 110, par. 2—801, Historical & Practice Notes, at 90 (Smith-Hurd 1983).

Federal cases establish no bright line. There is no "magic number" below which there cannot be a class, but above which there can. The number of class members is relevant, not determinative. *DeMarco v. Edens* (2d Cir. 1968), 390 F.2d 836.

One leading scholar has offered the following guideline:

"If the class has more than forty people in it, numerosity is satisfied; if the class has less than twenty-five people in it, numerosity probably is lacking; if the class has between twenty-five and forty, there is no automatic rule and other factors, * * * become relevant." Miller, *An Overview of Federal Class Actions: Past, Present, and Future*, Federal Judicial Center, at 22 (1977) (hereinafter Miller).

Our research has supported this guideline. See, *e.g.*, *Miller v. Motorola, Inc.* (N.D. Ill. 1977), 76 F.R.D. 516 (20 aggrieved persons in a class are not so numerous as to make joinder impracticable); *Williams v. Wallace Silversmiths, Inc.* (D. Conn. 1976), 75 F.R.D. 633, *appeal dismissed* (2d Cir. 1977), 566 F.2d 364 (37 class members insufficient); *McClinton v. Turbine Support, Division of Chromalloy American Corp.* (W.D. Tex. 1975), 68 F.R.D. 236 (29 members not enough); *Minersville Coal Co. v. Anthracite Export Association* (M.D. Pa. 1971), 55 F.R.D. 426 (330 anthracite coal companies "not so numerous"); see also *Pomeroy*, 47 Ill. App. 3d 468, 362 N.E.2d 55. But see *Cypress v. Newport News General* (4th Cir. 1967), 375 F.2d 648 (18 Negro physicians denied staff privileges because of race a proper class); *Manning v. Princeton Consumer Discount Co.* (E.D. Pa. 1975), 390 F. Supp. 320, *aff'd* (3d Cir. 1976), 533 F.2d 102 (15 consumers sufficient to bring action under Truth in Lending Act).

Since there is no bright line, no magic number, and also since 21 seems relatively close to the gray area, spoken of by Miller, where there is no automatic rule and where other factors become relevant, we feel justified in looking to those other factors.

■ Where the number of class members is at best fairly small, courts require demonstration of additional reasons why joinder is impracticable. *Carr v. New York Stock Exchange, Inc.* (N.D. Cal. 1976),

414 F. Supp. 1292.

These additional factors include: (1) the class members' geographical distribution; (2) the ability to identify and locate the class members; (3) the degree of knowledge and sophistication of the class members and their need for protection; (4) the amount of the claims of the individual class members; and (5) the nature of the cause of action.

### 1. GEOGRAPHICAL DISTRIBUTION

■ The geographical distribution of the class members is relevant in determining the practicality of joinder. (*DeMarco v. Edens* (2d Cir. 1968), 390 F.2d 836.) If the proposed class "is relatively small and the members all live within a particular city or some similarly contained area, it is not unreasonable to expect them to join and a class action probably is unnecessary." (Miller, at 23.) For example, in *Carr v. New York Stock Exchange, Inc.* (N.D. Cal. 1976), 414 F. Supp. 1292, a class action was brought on behalf of 100 persons who purchased securities in a brokerage house. The district court held that all plaintiffs except two were residents of the district in which the action was brought, and therefore, joinder was not impracticable.

In comparison, the class members in this case were either residents of Madison County or were doing business there, and all were amenable to service of process in Madison County.

### 2. EASE OF IDENTIFICATION AND LOCATION

Where the class number is small and each of the class members can be easily identified, located, and informed of the pendency of the action, joinder, rather than a class action, is appropriate. *Doe v. Charleston Area Medical Center, Inc.* (4th Cir. 1975), 529 F.2d 638; *Murray v. Norberg* (D.R.I. 1976), 423 F. Supp. 795.

During discovery, Germania produced a complete list of the commercial borrowers along with their addresses. Therefore, each class member is easily identifiable and each is easily able to be located.

### 3. KNOWLEDGE AND SOPHISTICATION

The degree of knowledge and sophistication of the class members along with their need for protection is also a consideration in determining whether a class action is appropriate. *Gordon v. Forsyth County Hospital Authority, Inc.* (M.D.N.C. 1976), 409 F. Supp. 708, *modified* (4th Cir. 1976), 544 F.2d 748; *Carr v. New York Stock Exchange, Inc.* (N.D. Cal. 1976), 414 F. Supp. 1292.

*Dolgow v. Anderson* (E.D. N.Y. 1968), 43 F.R.D. 472, 484-85, said it well:

"The class action is particularly appropriate where those who have allegedly been injured 'are in poor position to seek legal redress, either because they do not know enough or because such redress is disproportionately expensive.' [Citation.] Its *'historic mission'* has been to *'[take] care of the smaller guy.'* Statement of Professor Ben Kaplan, Reporter of the new Rules, quoted in Frankel, Amended Rule 23 From A Judge's Point of View, 32 Antitrust L.J. 295, 299 (1966)." (Emphasis added.)

Here, the proposed class was not made up of the "smaller guy." Instead, the class, for the most part, was composed of corporate, commercial borrowers. Even Wood River, both in its brief and in oral argument, conceded that objectors Donald G. Soffer and Marvin Rochleau were "two businessmen who are astute," and were "sophisticated business borrowers."

We believe that these commercial borrowers were knowledgeable, sophisticated and in a position to seek legal redress individually.

We do not believe that denying class certification, in this instance, would be "almost equivalent to closing the door of justice" on these commercial borrowers. See *Weeks v. Bareco Oil Co.* (7th Cir. 1941), 125 F.2d 84, 90.

### 4. SIZE OF INDIVIDUAL CLAIMS

The size of the individual class member's claims is also relevant.

"If [the claims] are small, the chances are that there is impracticability of joinder, because people are not likely to become involved in litigation if only a small amount of money is at stake. On the other hand, if the class is composed of people with very large claims, joinder is far more feasible economically and impracticability will exist only if the group is larger." Miller, at 23.

The loans and the interest amounts on them, here, were sizable, with original balances ranging from $120,000 to $1,050,000. At the time of the interest-rate increase, the loans had account balances ranging from $49,327 to $798,203. These claims are not too small for individual pursuit. See *Weeks v. Bareco Oil Co.* (7th Cir. 1941), 125 F.2d 84; *Swanson v. American Consumer Industries, Inc.* (7th Cir. 1969), 415 F.2d 1326, 1333 n.9.

### 5. NATURE OF THE CAUSE OF ACTION

The nature of the cause of action is a last factor. Cases brought to vindicate constitutional or civil rights, or brought for declaratory and

injunctive relief, may result in a relaxation of the requirement for larger numbers. *Jenkins v. United Gas Corp.* (5th Cir. 1968), 400 F.2d 28; see, *e.g.*, *Cypress v. Newport News General* (4th Cir. 1967), 375 F.2d 648.

This case was not brought to vindicate a constitutional right. This case champions no civil right. In this case, plaintiffs want money for breach of contract. There is no compelling need for relaxation of the requirement for larger numbers.

Consideration of these additional factors show no demonstration of any reason why joinder is impracticable for this small group.

Whether an action may proceed as a class action is discretionary with the circuit court. On appeal, the circuit court's decision may not be reversed absent a clear abuse of discretion. *McCabe v. Burgess* (1979), 75 Ill. 2d 457, 389 N.E.2d 565.

Here, we find that the circuit court abused its discretion when it certified this class. We do not believe that this class was so numerous so as to make joinder impracticable under these circumstances. Therefore, we reverse the circuit court and remand for decertification and further proceedings.

For symmetry, we close as we opened, with a quote from Yeazell.

"Yet somehow, under the pressure of events, courts have fashioned the device into a sporadically effective means of dealing with groups as various as the disgruntled tenantry of the parish of Wem and the victims of refrigerator sales fraud. However untidy the doctrine, that's not a bad track record for a device no one understands." Yeazell, *From Group Litigation to Class Action, Part II: Interest, Class, and Representation*, 27 UCLA L. Rev. 1067, 1121 (1980).

Reversed and remanded.

LEWIS, P. J., and HARRISON, J., concur.