(No. 41099.—)

PHYLLIS FIORITO *et al.*, Appellees, *vs.* THEODORE A. JONES, Director of Revenue, *et al.*, Appellants.

*Opinion filed March 28, 1968.—Rehearing denied May 28, 1968.*

WILLIAM G. CLARK, Attorney General, of Springfield, (JOHN J. O'TOOLE, Assistant Attorney General, of counsel,) for appellants.

EDWARD A. BERMAN, DAVID P. SCHIPPERS, and JAMES RENIZINO, all of Chicago, for appellees.

DEFREES, FISKE, THOMSON & SIMMONS, of Chicago, for *amicus curiae*.

Mr. JUSTICE KLUCZYNSKI delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Cook County holding unconstitutional the 1967 amendments to the Service Occupation Tax Act (Ill. Rev. Stat. 1967, chap. 120, par. 439.101 *et seq.*), the Service Use Tax Act (Ill. Rev. Stat. 1967, chap. 120, par. 439.31), and the Municipal and County Service Occupation Tax Acts (Ill. Rev. Stat. 1967, chap. 24, par. 8—11—5 and chap. 34, par. 409.2), as well as articles I, II, and III of the Department of Revenue's Rules and Regulations (which implemented these amendatory Acts).

The complaint was filed by Phyllis Fiorito, doing business as JayLee Studios in Chicago, as a citizen and taxpayer, on behalf of herself and "all others similarly situated" against the defendants, specifically naming them. Shortly thereafter, the trial court entered an injunction ordering that the taxes collected under these Acts be temporarily impounded and withheld by the Treasurer of the State of Illinois from the General Revenue Fund. Subsequently, four other individual and corporate plaintiffs sought and obtained leave to intervene and each adopted the Fiorito complaint. The defendants filed a motion to dissolve the temporary injunction and to strike and dismiss the complaint. There being no contested issues of fact, the cause was submitted to the trial court on the complaint

and the motion to dismiss. On December 6, 1967, the trial court entered the decree finalizing the injunction and holding the above Acts violative of section 1 of article IX (uniformity of taxation), section 2 of article II (due process) and section 22 of article IV (special legislation) of the Illinois constitution and the fourteenth amendment (due process, equal protection) to the Federal constitution. State revenue being directly involved, the jurisdiction of this court is properly invoked.

Before the enactment of the 1967 amendments, the Service Occupation Tax Act imposed a tax upon "all persons engaged in the business of making sales of service (hereinafter referred to as servicemen) at the rate of 3% of the cost price of all tangible personal property transferred by said servicemen either in the form of tangible personal property or in the form of real estate as an incident to a 'sale of service' * * * and at the rate of 3½% where the sale of service occurs on or after December 1, 1961, * * *." (Ill. Rev. Stat. 1965, chap. 120, par. 439.103.) The complementary Service Use Tax Act likewise imposed a tax upon "the privilege of using in this State real or tangible personal property acquired as an incident to the purchase of a service from a serviceman." (Par. 439.33.) "Sale of Service" was defined as "any transaction except a retail sale of tangible personal property taxable under the Retailers' Occupation Tax Act * * * or under the Use Tax Act", with certain exceptions that are not relevant here. (Pars. 439.32, 439.102.) Thus, prior to the amendments of 1967, every "serviceman" with a few specific exceptions (e.g. sales of service by a charitable organization, sale of newsprint and ink sold for the primary purpose of conveying news) who transferred tangible personal property as an incident to performing his service was taxed under this Act, the base of the tax being the cost price to him of the materials transferred.

The 1967 amendments substantially altered the taxing

scheme under both the Service Occupation and the Service Use Tax Acts. The principal changes were: (1) the base of the tax was expanded to the gross receipts of the sale of service (Ill. Rev. Stat. 1967, chap. 120, pars. 439.32, 439.102) and (2) the application of the service occupational taxes was limited to "sales of service" by four enumerated categories of servicemen, to-wit:

"a. Selling specially made machines, tools, dies, jigs, patterns, guages, or other specially made tools or equipment, or

b. graphic arts or related occupations not presently taxable under the 'Retailers' Occupation Tax Act' or the 'Use Tax Act', or

c. repairing, renovating or reconditioning tangible personal property, or

d. selling drugs or medicines as a registered pharmacist or druggist on the prescription of a licensed physician or other person qualified to issue prescriptions."
(Pars. 439.102, 439.32.)

In the same sections the following types of sales were then specifically exempted from the definition of "sale of service", *viz.,* any such sale: "(1) for or by any governmental body, (2) for or by any corporation, society, association, foundation or institution organized and operated exclusively for charitable, religious or educational purposes or (3) for the primary purpose of conveying news (with or without other information), or (4) in connection with the sale, purchase, transfer, employment or use of pollution control facilities or services related thereto, or (5) for someone else in producing tangible personal property which will be transferred by the purchaser to another person, without a specific valuable consideration, for ultimate use or consumption by such other person."

In addition to these principal changes, the amendments raised the tax from $3\frac{1}{2}\%$ to $4\frac{1}{4}\%$ (pars. 439.33, 439.103), placed a duty on the servicemen to collect and remit the

tax monies due under both Acts, and provided that municipalities and counties could levy in combination up to ¾ of 1% on these "sales of service", making a possible tax of 5%. (Chap. 24, par. 8—11—5, chap. 34, 409.2.) These amendments took effect on August 1, 1967. Also effective on that date, the Department of Revenue of the State of Illinois passed certain Rules and Regulations designed to clarify and regulate the administration of the amended tax Acts. See arts. I, II, and III, Department's Rules and Regulations, bulletin issued August 1, 1967.

On appeal, defendants raise two points. They argue (1) that plaintiffs' suit is not a proper case for a class action, *viz.,* that they are entitled to sue only for reimbursement of the tax monies paid by them or to enjoin the collection of those monies owing by them and not by all other "servicemen" in the State and (2) that, in any event, the amendatory Acts are constitutional.

Irrespective of our holding concerning the propriety of plaintiffs' right to bring a class action, we must determine the constitutional issues raised since plaintiffs' standing to raise these issues is not challenged, and, in fact, is admitted by defendants. We therefore proceed to a consideration of the constitutionality of the legislation under attack.

It is well established that the legislature has broad powers to establish reasonable classifications in defining subjects of taxation. (*Klein* v. *Hulman,* 34 Ill.2d 343, 346; *People ex rel. Holland Coal Co.* v. *Isaacs,* 22 Ill.2d 477; *Ohio Oil Co.* v. *Wright,* 386 Ill. 206.) It is equally well settled that the legislature may define a general class which is subject to an occupation tax and then specifically remove a subclass (*Bode* v. *Barrett,* 412 Ill. 204; *Modern Dairy Co.* v. *Department of Revenue,* 413 Ill. 55), or it may merely define a subclass without naming the general class. (*People* v. *Deep Rock Oil Corp.,* 343 Ill. 388.) But regardless of the manner in which the classes to be taxed have been defined, the classifications must be based upon real and substantial

differences between persons taxed and those not taxed (*City of Chicago* v. *Ames,* 365 Ill. 529), and they must bear some reasonable relationship to the object of the legislation (*Modern Dairy Co.* v. *Department of Revenue*), or to public policy (*Reif* v. *Barrett,* 355 Ill. 104).

Applying these principles to the instant case, it is apparent that the basic question determinative of all the constitutional objections advanced here is whether a reasonable difference exists between the four subclasses specifically subjected to taxation by the amended Service Occupation and Service Use Tax Acts and those subclasses impliedly or expressly exempted from taxation. In our judgment, this question must be answered in the negative.

As previously noted, prior to the 1967 amendments, the Service Occupation Tax Act purported to tax all servicemen who transferred tangible personal property as an incident to performing their service, the base of the tax being the cost price to the serviceman of the materials transferred. We think it clear that the intent of this Act was to place servicemen, as nearly as possible, on a tax parity with retailers to the extent that they perform the same economic function as retailers, *viz.,* to the extent they transfer tangible personal property to the ultimate consumer. The object was to tax the incidental transfer of property which, due to the accompanying and primary service function, fell outside the scope of the Retailers' Occupation Tax Act. (Ill. Rev. Stat. 1965, chap. 120, par. 440 *et seq.*) While the measure or base of the tax, the cost price to the serviceman of the materials transferred, did not coincide with the resale price of these materials (the measure under the Retailers' Occupation Tax Act), it was the most nearly equivalent measure of tax practicable under the circumstances since in the ordinary case it would be difficult to determine what percentage of a serviceman's total receipts was attributable to the mere transfer of property as opposed to the rendition of the service. Thus, this tax base eliminated the service as

such from the onus of the tax, taxing the serviceman only in relation to the extent that, in the manner of a retailer, he was a seller of property to the ultimate user.

While the Service Occupation Tax Act as amended still purports to tax all servicemen who transfer tangible personal property as an incident to performing their service, the base of the tax has been expanded to the total or gross receipts of the "sale of service" with the servicemen subject to the tax limited to the four subclasses previously designated. The effect of this latter change, as impliedly acknowledged by the Department of Revenue (see Dept. of Revenue's Rules relating to Service Occupation Tax Act, art. I, sec. 8, issued August 1, 1967), is to exclude certain types or classes of servicemen from taxation under the amendatory Act who were subject to tax under the previous Act. Specific examples of such classes are: (1) laundries, dry cleaners and dyeing establishments that purchase coat hangers, suit bags, string, dyes and other such materials, (2) wrapping services that purchase paper, string, bags and other packaging products, (3) business-operated hospitals that dispense drugs, medicines, and other tangible personal property to patients, (4) chiropodists, chiropractors and others who furnish arch supports, trusses and similar devices; and (5) embalmers who purchase embalming fluid. (Ill. Dept. of Rev. Bulletin of July 1, 1965, pages 446-49.) These servicemen are illustrative of the narrowed application of the tax imposed by the amendatory Act but do by no means circumscribe the number of servicemen now excluded from taxation. Thus, even if the constitutionality of the amendatory Act were to be adjudged exclusive of any consideration of the change in the base of the tax, serious doubts as to its constitutionality would arise since we cannot readily discern any reasonable difference between the four subclasses of servicemen specifically subjected to the tax and those impliedly excluded. (See *People ex rel. Holland Coal Co.* v. *Isaacs, 22* Ill.2d

477.) Certainly, the majority of servicemen excluded from taxation under the Act appear to possess the same relevant attributes (*e.g.* (1) they render a service, (2) involving an incidental transfer of property) as the businesses on which the tax was levied, while, conversely, they do not appear to possess any characteristics which are not possessed in equal measure by the businesses taxed. Nor is it contended or does it appear that public policy considerations compel different tax treatment between these classes of businesses. As such, the amendatory Act and the other related Acts, to the extent that they incorporate these classifications, are vulnerable to constitutional attack for lack of uniformity and for denial of the due-process and equal-protection guarantees of the Illinois and Federal constitutions.

However, we believe that a more dramatic and conclusive case against holding the amendatory Act constitutional is presented when the reasonableness of the classifications made by that Act are considered, as they must be, in light of the new gross receipts tax base set forth in the Act. Because of this new base, it is difficult to determine the legislature's intent regarding the purpose or object of the amended Service Occupation Tax Act from a reading of the Act itself and therefore, without the aid of any legislative history or committee comments, the precise purpose of the Act cannot be stated with certainty. However, it is certain that the purpose of the amendatory Act must be either, like the former Act, to impose a tax on the incidental transfer of personal property by a serviceman or to impose the tax on the performance of service itself. Given either construction, the amendatory Act cannot be reconciled with relevant constitutional guidelines already set forth in this opinion. If the tax is deemed to be levied on the performance of service, it is unreasonable to exclude transactions in which no personal property is transferred. But, if the tax is deemed to be levied on the incidental transfer of

personal property by a serviceman, it is unreasonable to measure such tax by the gross receipts of the entire transaction (rather than, as in the former Act, the cost price to the serviceman of the materials transferred). In other words, if the tax is aimed at the service performed (such as repairing a car) then a tax based on *gross receipts* would be reasonable, but excluding individuals (such as doctors and lawyers) from the scope of the tax merely because no incidental transfer of personalty was involved would be unreasonable. Or, on the other hand, if the tax is aimed at the transfer of the personalty itself, then excluding those individuals who did not transfer any significant amount of property while performing their service (doctors, etc.) would be reasonable, but basing the tax on anything not directly related to the value of the personalty transferred, *e.g.* basing it upon *gross receipts*, would be unreasonable.

Perhaps an example best serves to illustrate the logic underlying the above conclusions. An auto repairman repairs a customer's car. His charge for labor is $50, but the only new part installed is a $1 sparkplug. Under a service occupational tax based on *gross receipts* the repairman is taxed on the entire $51 rather than the $1. This tax can only be justified if the tax is aimed at the service and not at the incidental transfer of personalty (the sparkplug). But if the tax is aimed at the service, then there is no reasonable basis for excluding persons who perform services which do not involve an incidental transfer of personalty.

We believe the foregoing analysis of the consequences of expanding the base of the tax to the gross receipts of the "sale of service" sufficiently disposes of the defendants' assertion that a real difference exists between the subclasses specifically subjected to taxation and those impliedly excluded because the former involve "manual skills which would in most instances involve a passage of significant tangible personal property" while the latter classes are of

a professional nature "where the tangible personal property to be transferred is inconsequential and insignificant." Even accepting the truth of this distinction between classes (although we have previously noted that "the majority of servicemen excluded from taxation under the Act appear to possess the same relevant attributes * * * as the businesses on which the tax was levied"), it is manifest that this distinction does not constitute a real and reasonable difference *for purposes of a gross receipts tax* between those subjected to taxation and those excluded. Nor do we find any other real or reasonable difference between the classes subject to taxation and those excluded sufficient to satisfy constitutional demands of uniformity, due process and equal protection of law. We therefore hold the classifications made by the amendatory Service Occupation Tax Act, and as incorporated in the other acts challenged here, unconstitutional.

The question remains, however, whether by reason of this holding, the remaining provisions of the amendments are also invalid, notwithstanding the severability clauses set forth in the Acts. (Ill. Rev. Stat. 1967, chap. 120, pars. 439.51, 439.121.) The settled and governing test of severability is whether the valid and invalid provisions of the Act are "so mutually 'connected with and dependent on each other, as conditions, considerations or compensations for each other, as to warrant the belief that the legislature intended them as a whole, and if all could not be carried into effect the legislature would not pass the residue independently * * *'." (*Winter* v. *Barrett,* 352 Ill. 441 at page 475.) The provisions are not severable if "they are essentially and inseparably connected in substance." *People ex rel. Dougherty* v. *City of Rock Island,* 271 Ill. 412 at page 422; see also, *Ohio Oil Co.* v. *Wright,* 386 Ill. 206; *Springfield Gas and Electric Co.* v. *City of Springfield,* 292 Ill. 236.

The classifications established by the 1967 amendments

constitute the very heart of the new service occupation and service use taxes inasmuch as they determine the paramount consideration of who bears the burden of the tax. The remaining provisions of the amendments for the most part deal merely with the mechanics of administering the tax statute. While the new gross receipts base would not be subject to this characterization, it seems plain that the legislature enacted this expanded base only because it had contracted the class taxable under the Act. Clearly, then, the remaining provisions, including the new tax base, are so inextricably bound up with the invalid classifications that they cannot be kept in force without doing violence to legislative intent. Simply stated, the amendatory acts exclusive of the voided classifications would not be the Acts that the General Assembly passed or intended to pass; therefore, the amendments are void in their entirety.

While the 1967 amendments purport to specifically repeal the prior service occupation and service use tax provisions, our past decisions are clear—and the Attorney General has so conceded—that invalidity of the 1967 amendments in their entirety renders the repealing sections void also. As was held in *People* v. *Fox,* 294 Ill. 263 at page 269, "where it is seen that the repeal is intended to clear the way for the operation of the act containing the repealing clause and to displace the old law with the new, then, if the new law be unconstitutional, the repealing clause becomes dependent and inoperative and falls with the main purpose of the act containing it." (And see *County of Cook* v. *Healy, 222* Ill. 310.) It is clear that the repealing sections of the 1967 amendments are inoperative, leaving the Service Occupation Tax Act and related acts in full force and effect as they existed prior to the adoption of the amendments. *People ex rel. Barrett* v. *Sbarbaro,* 386 Ill. 581, 590.

Finally, we turn to a consideration of whether the plaintiffs are properly here as representatives of a class or solely representing themselves. Each of the plaintiffs is either a

serviceman within the categories deemed taxable by the 1967 amendments or a purchaser from such serviceman. They are all directly affected and burdened by the discriminatory classifications of the amendments and therefore, as previously noted, the status of each plaintiff to bring this suit on his own behalf is not challenged. However, defendants do challenge the right of plaintiffs to maintain a class action, relying upon the decision in *Peoples Store of Roseland* v. *McKibbin,* 379 Ill. 148. Therein, certain retailers brought an action against the Director of Finance and other State officials to enjoin the collection of taxes under the Retailers' Occupation Tax Act on certain sales of food supplies by themselves and others similarly situated. Also included in their prayer for relief was a request for an issuance of credit memoranda for taxes paid, and an order enjoining other retailers similarly situated from bringing a like action. Plaintiffs' claims for refund were predicated on and controlled by the statutory right to recovery provided by section 6 of the Retailers' Occupation Tax Act. (Ill. Rev. Stat. 1939, chap. 120, par. 445.) In rejecting the use of the class suit, the court observed that while all retailers in the State, engaged in selling food supplies of the kind sold by plaintiffs, had an interest in having their sales exempted, nevertheless, a decision declaring the sales exempt would not create a fund from which reimbursement could be made, nor establish the existence of a right to recovery in every vendor, each of whom must make his own proof as required by section 6. The court stated that class litigation may be sustained where all members of the class are found to have a common interest in the questions involved and in the results obtained.

In cases decided subsequent to *Roseland,* courts, uniformly applying this basic criterion of a community of interest in the subject matter of the suit and the remedy requested, have upheld the use of a class action in a variety

of situations (*Newberry Library* v. *Board of Education,* 387 Ill. 85; *Winger* v. *Chicago City Bank and Trust Co.,* 394 Ill. 94; *Smyth* v. *Kasper American State Bank,* 9 Ill.2d 27), including taxpayer suits to restrain the enforcement of allegedly invalid taxing acts or to recover payments made thereunder. *Johnson* v. *Halpin,* 413 Ill. 257; *Harrison Sheet Steel Co.* v. *Lyons,* 15 Ill.2d 532; *Crane Construction Co.* v. *Symons Clamp & Manufacturing Co.,* 25 Ill.2d 521.

In *Harrison Sheet Steel Co.* v. *Lyons,* a retailing company sued to enjoin further collection of retailers' occupation tax on certain sales and for reimbursement of taxes previously paid. Thereafter, a customer of the retailer brought suit against it and the appropriate State officials, alleging that he and other customers similarly situated really bore the burden of tax thereby making any reimbursement of the retailer unjust enrichment. A decree was entered in the retailer's case finding the transactions in question did not measure a tax and ultimately the court ordered a cash refund of approximately $42,000.00. On the retailer's motion the customer's suit was dismissed and on appeal the cases were consolidated. The court held that the retailer couldn't resist suit by customers for restitution since the policy expressed in section 6 of the Retailers' Occupation Tax Act, that the individual who actually bore the burden of the tax was entitled to refund, was applicable whether the proceeding was an administrative one terminating in credit memoranda or judicial, terminating in cash refund. To determine the propriety of the customer's use of the class action, the court analyzed the facts in the case in light of the basic criterion for class actions. It stated: "The subject matter in this case is the refund to be received by the company under the decree of the trial court. The requested remedy is the declaration of a constructive trust so that the amount refunded can be distributed to the company's customers who bore the burden of the tax.

"The company contends that because the fund was created as a result of unrelated transactions, a class suit is inappropriate, citing *Peoples Store of Roseland* v. *Mc-Kibbin,* 379 Ill. 148. In that case, however, there was no common fund and the rights of the members of the alleged class depended upon different factual circumstances, to which different legal principles might be applicable. Here there is a common fund, and common factual and legal issues." ·15 Ill.2d at 537—8.

Here, as in *Harrison,* there is a common fund, and common factual and legal issues, the most important being the constitutionality of the 1967 amendments. So also, in view of this dominant issue, the differences which defendants contend exist between members of the class with respect to their right and amount of recovery from the fund are not sufficient to bar the instant action. We therefore hold that the maintenance of the class action here was proper.

With regard to determining which members of the class are entitled to cash refunds, it is our opinion that the relevant policy expressed in the governing statutes, the Service Occupation and Use Tax Acts, must be followed. Sections 17 (pars. 439.117 and 439.47) of those Acts provide, similar to section 6 of the Retailers' Occupation Tax Act, that "No credit may be allowed for any amounts paid by any such serviceman unless it shall appear that he bore the burden of such amount and did not shift the burden thereof to anyone else, or unless it appears that he or his legal representative has unconditionally repaid such amount to his vendee (1) who bore the burden thereof and has not shifted such burden directly or indirectly in any manner whatsoever; (2) who, if he has shifted such burden, has repaid unconditionally such amount to his own vendee, and (3) who is not entitled to receive any reimbursement therefor from any other source than from his vendor, nor to be relieved of such burden in any other manner whatsoever." Ill. Rev. Stat. 1967, chap. 120, pars. 439.117, 439.47.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed and the cause remanded for proceedings consistent with the views expressed herein.

*Affirmed and remanded with directions.*