THE BOARD OF EDUCATION OF COMMUNITY UNIT SCHOOL
DISTRICT 201-U, WILL COUNTY, Plaintiff-Appellant, *v.* OREN POMEROY
*et al.*, Defendants-Appellees.

Third District   No. 76-316

Opinion filed April 14, 1977.

STOUDER, J., concurring in part and dissenting in part.

Everett E. Nicholas and Stanley B. Eisenhammer, both of Robbins, Schwartz, Nicholas & Lifton, Ltd., of Chicago, for appellant.

James E. Garrison, State's Attorney, of Joliet, for appellees.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

This is an appeal from a judgment of the Circuit Court of Will County denying a motion to vacate a previous order of the said circuit court granting a motion to dismiss the complaint. An alternative request, as to two counts of the amended complaint, for leave to amend, was granted, and such order is not appealed from. Plaintiff comes to this court pursuant to Supreme Court Rule 304(a) for the reason that the trial court has made an express written finding that there was no just reason for delaying enforcement or appeal.

The action was instituted by the Board of Education of Community Unit School District 201-U of Will County, Illinois, in its individual capacity and also sought relief as a representative of a class of Boards of Education of Will County. No authorization is stated or shown as to any boards of education, other than the plaintiff specified in the action. The action was instituted against Oren Pomeroy, supervisor of assessments of Will County, and as against Roy Hassert, Bernard J. Bannon and Daniel T. Lambert, as members of the Board of Review of Will County, and also as against Kent Bosworth, county treasurer and ex-officio county collector of Will County. The action is brought with respect to certain alleged practices of the defendants in the assessment of property, collection of taxes and distribution of tax revenues, and for the recovery of tax revenues alleged to be wrongfully withheld, and additionally for interest and statutory penalties.

As we have noted, pursuant to defendants' motion to dismiss, the trial court, on February 26, 1975, dismissed plaintiff's complaint. Plaintiff subsequently filed a motion to vacate the order of February 26, 1975, and requested leave to file an amended complaint as to counts III and IV. On April 23, 1976, the trial court denied plaintiff's motion to vacate the prior order of dismissal of February 26, 1975, but granted plaintiff leave to file amendments to counts III and IV of their complaint. The trial court entered a finding in accordance with Rule 304(a) (Ill. Rev. Stat. 1975, ch. 110A, par. 304), that there was no just reason for delaying enforcement or appeal of the order appealed from.

It appears that plaintiff Board of Education derives a substantial portion of its operating revenue from personal and property taxes

extended and collected upon property within its school district. Although plaintiff has the responsibility of establishing its operating budget and of levying certain taxes, various county officials referred to have the responsibility of assessing the property to be taxed, of extending the taxes, of collecting the tax moneys and distributing the tax revenues to local boards of education, under the provisions of the Revenue Act of 1939 (Ill. Rev. Stat. 1975, ch. 120, par. 482 *et seq.*).

The complaint filed by plaintiff on December 12, 1973, consisted of four counts. Counts I and II of the complaint alleged that the defendants either unreasonably delayed or failed to perform their statutory duties in the assessment of property and the collection of taxes. Plaintiff alleged that in 1971 and 1972, defendant Oren Pomeroy, supervisor of assessments, did not make assessments as required by section 95 of the Revenue Act (Ill. Rev. Stat. 1971, ch. 120, par. 576) and did not return the assessment books to the Board of Review by the third Monday of June as required by section 100 of the Revenue Act (Ill. Rev. Stat. 1971, ch. 120, par. 581). Plaintiff also alleged that the Board of Review of Will County, consisting of defendants Roy Hassert, Bernard J. Bannon and Daniel T. Lambert, did not meet on or before the third Monday in June 1971, nor complete its work and adjourn prior to January 20, 1972, and that the Board of Review did not meet on or before the third Monday in June 1972, nor complete its work and adjourn prior to December 31, 1972, all as required by section 107 of the Revenue Act (Ill. Rev. Stat. 1971, ch. 120, par. 588). Plaintiff further alleged that Kent Bosworth, county collector, did not prepare and mail tax bills 30 days prior to the first delinquent date (June 1, 1973) (nor prior to the second delinquent date (September 1, 1973), as required by sections 190 and 224 of the Revenue Act (Ill. Rev. Stat. 1971, ch. 120, pars. 671, 705)). Plaintiff also alleged that defendants joint and several delays had forced plaintiff, and other school boards similarly situated, to borrow money to keep their school districts solvent, and to pay interest on that borrowed money.

The complaint also alleged that plaintiff fairly represents the class of Boards of Education injured by defendants' conduct, and stated that plaintiff was bringing this action on behalf of itself and all members of the class consisting of all other school districts within Will County. On the basis of such allegation, in count I of the complaint, plaintiff then prayed that the actions of defendants be decreed to be in violation of the statutes and that the court issue a mandatory injunction compelling defendants and their successors (in the future) to proceed according to statutory provisions in forthcoming years, and that the court grant such other relief as it deemed necessary. Count II, labeled by plaintiff "In Law," contained the same basic allegations as count I, but added the allegation

that defendants' delay has caused the plaintiff class to pay legal interest through December 7, 1973, in the amount of $250,000, and prayed that defendants be compelled to pay such sum to plaintiff as damages.

Counts III and IV related solely to defendant Bosworth, county collector. It was alleged that Bosworth was authorized to withhold from distribution the amounts of taxes paid under protest or 1% of the total taxes collected, whichever is less, by section 194 of the Revenue Act (Ill. Rev. Stat. 1971, ch. 120, par. 675), and that defendant Bosworth in 1971 and 1972 withheld from distribution to plaintiff and other school districts 1% of the taxes collected or the amount paid under protest, whichever was greater. Count III prayed that Bosworth's action be declared to be in violation of the statute and that Bosworth and his successors be enjoined from this practice and also asked for further relief as this court deemed necessary. Count IV, at law, requested restitution of the amounts wrongfully withheld, together with damages authorized by section 17— 15 of The School Code (Ill. Rev. Stat. 1975, ch. 12 par. 17—15). All four counts, including those labeled "legal" and "equity" were framed as representative suits or class action counts seeking relief for both the board of education named in the complaint and all others similarly situated. The complaint in this cause does not allege that defendants intentionally violated any of the statutory provisions, but only asserts that the particular functions described were not completed by the certain dates specified.

Defendants filed a motion to dismiss plaintiff's complaint setting up various grounds as a basis therefor. The trial court, in its order dated February 26, 1975, found that plaintiff could not maintain its action as a class action or representative suit and that, also, the complaint, with respect to plaintiff individually, failed to state a cause of action. Plaintiff subsequently filed a motion to vacate the February 26 order and requested leave to file an amended complaint as to counts III and IV. On April 23, 1976, the trial court denied plaintiff's motion to vacate but granted plaintiff leave to amend counts III and IV of its complaint.

As a preliminary matter, we should note defendants' argument that since the motion to vacate which was requested prayed in the alternative for leave to file an amended complaint as to counts III and IV, which request was granted, and since plaintiff has filed an amended complaint on counts III and IV thereafter, plaintiff has acquiesced in the trial court's ruling and may not now proceed with this appeal. As support for this position, defendants cite *People ex rel. Valentine v. Biggs* (1st Dist. 1941), 312 Ill. App. 199, 207, 38 N.E.2d 366, wherein the court stated:

"'As a general rule, if a party, after an order or judgment upon demurrer to the pleadings is given against him, under leave of court, amends the pleading demurred to, * * * he acquiesces in

the judgment or order upon the demurrer, and will not be permitted to appeal therefrom, or, unless an exception is duly saved, to assign it for error in the appellate court * * *.' "

We believe, however, that Supreme Court Rule 304(a) to which we have referred, which provides for taking of an appeal where there are multiple parties or claims and where there is a final judgment as to one or more but fewer than all of the parties or claims, if the trial court makes an express finding that there is no just reason for delaying enforcement or appeal, an appeal may be sanctioned at such time. While we may entertain some doubt as to whether certain of the issues considered on appeal were designed to be covered by the Supreme Court rule to which we refer, we nevertheless have concluded that we will consider plaintiff's appeal as being properly before this court.

We shall first consider whether the trial court ruled correctly in dismissing plaintiff's action as a representative or class action. In this connection we should refer to the order of the trial court of February 26, 1975, where the court says:

"At the outset it appears to the court that the class actions in Equity, as alleged in Counts I and III, and in Law, as alleged in Counts II and IV, cannot be maintained. The Illinois law governing class or representative suits is all case law. The class suit is an invention of equity to enable it to proceed to a decree in suits where the number of those interested in the subject litigation is so great that their joinder as parties in conformity to the usual rules of procedure is impractical. [Citations.]"

The trial court then went on to refer to the case of *Reardon v. Ford Motor Co.* (3d Dist. 1972), 7 Ill. App. 3d 338, 341, 287 N.E.2d 519. In the *Reardon* case, this court, in its opinion, states:

"The mere fact that there are numerous aggrieved parties all of whom have similar claims against a defendant is not alone sufficient to support a class action in our state. See *Fetherston v. National Republic Bancorp.*, 280 Ill. App. 151; *Michelsen v. Penney*, 10 F. Supp. 537.

Representation by a few on behalf of many as a device to conclude the rights of the absent parties must be regarded by the courts as conduct requiring close and vigilant scrutiny, and as a technique which should be resorted to only when complete justice to all interested parties will follow from its application. Each situation must be carefully analyzed and considered from the viewpoint of the entire class, and general definitions as to the right of the named party to bring the action must give way to particular circumstances. Where the right to proceed is doubtful, permission

will be generally refused. See Fox, Representative Actions and Proceedings, 1954 U. Ill. L. Forum, page 97.

It is to be noted that the matter of 'class or representative actions' in Illinois is governed entirely by case law so we must examine and analyze the situation presented in the instant case in the light of the authoritative decisions rendered by the reviewing courts of our State." 7 Ill. App. 3d 338, 341.

■■ In the cause before us, there are only 46 separate school districts in Will County. This is not so large a number as to render separate litigation in the courts of the county impossible or impractical. All such districts have convenient access to the court. It appears, also, that the claims would be based on numerous separate and distinct transactions (as to payments, assessments, and protests). We conclude that maintenance of a representative suit under the facts is not mandated. The trial court, in the exercise of its discretion, has determined that a representative suit should not be sanctioned. We see no basis for reversing this determination of the trial court in the instant action.

■■ We should also observe that there is no authority for an action at law (rather than equity) by a plaintiff in a representative capacity. (See Ill. L. & Prac. *Parties* § 13 (1957); *Arthur Rubloff & Co. v. Leaf* (1st Dist. 1952), 347 Ill. App. 191, 106 N.E.2d 735.) In the action instituted as a class action by plaintiff, a mandatory injunction is sought, compelling defendants (and their successors in the future) to proceed in accordance with certain statutes regarding tax assessment, billing, collection and distribution proceedings (including protested taxes). In the analysis of issues in this case, we should note that the statutory provisions regarding adjournment of the Board of Review and other procedures applying to defendants are basically directory (Ill. Rev. Stat. 1975, ch. 120, par. 581, 671; *Farmers & Merchants Bank v. City of Vandalia* (4th Dist. 1894), 57 Ill. App. 681; *Eurigh v. People ex rel. Miller* (1875), 79 Ill. 214; *Barkley v. Dale* (1905), 213 Ill. 614). That they are directory is clearly supported by the legislative enactment of sections 316 and 317 of the Revenue Act (Ill. Rev. Stat. 1975, ch. 120, pars. 797, 798), where it is provided that failure to deliver collectors' books on time does not affect the validity of the assessment. The courts and the legislature have thus both recognized that exact compliance with statutory dates might become impossible and would work serious hardships on both county officers and the taxpayers. That the statutory provisions are directory is also clear from a consideration of the circumstance which would apply to Bosworth, since it is alleged he did not mail the statements 30 days prior to the respective final days for payment of installments. It could hardly be maintained that Bosworth would be required to mail such statements if he did not even

have possession of the books from the Board of Review, if that was the case (as implied in the complaint).

■■■ The granting of a mandatory injunction is also discretionary with the court. It is an extraordinary remedy, in any event, and the complaint must allege, specifically, material facts which would justify such action. The action contemplated would require the courts to supervise assessment of property by public officials, which would be contrary to the precedent outlined in *Bistor v. Board of Assessors* (1931), 346 Ill. 362. Mandatory injunctions are looked upon with disfavor by our courts and if relief is available through mandamus, as it is in the instant case, the plaintiff must pursue that remedy. In such case, it is deemed that equity has no jurisdiction. (*Lyle v. City of Chicago* (1934), 357 Ill. 41.) We should also observe that mandatory injunctions are not granted to correct past wrongs and would not be issued to prevent future wrongs without specific allegations that the wrongs will be committed in the future (which was not done in the complaint). Obviously, plaintiff's remedy is through mandamus. A mandamus action is one which would command the persons ordered in their official capacity to carry out their duties as specified by statute and to correct failure to discharge statutory duties. *Lyle v. City of Chicago* (1934), 357 Ill. 41.

We should also make note of the fact that the complaint alleges that defendant Bosworth wrongfully withheld certain tax moneys from distribution to plaintiff and other school districts. Section 194 of the Revenue Act (Ill. Rev. Stat. 1971, ch. 120, par. 675) provided:

> "The collector may withhold from distribution the amounts paid under protest or 1% of the total taxes collected, whichever is less."

As a remedial measure (if the collector fails in his duty as to distribution), in section 17—15 of the School Code (Ill. Rev. Stat. 1975, ch. 122, par. 17—15), it is provided that:

> "If any collector fails to pay the taxes or any part thereof, the school treasurer or other authorized person may proceed against him and his sureties in a civil action upon his official bond in any court of competent jurisdiction. The collector so in default shall pay 12% of the amount due to be assessed as damages, which shall be included in the judgment rendered against him. If he can show that any part of the taxes could not be collected by law, he shall not be liable for such taxes until he has collected, or may be able to collect them."

This procedure, which furnishes an adequate remedy, normally was available to the plaintiff and other school districts for defaults alleged as to defendant Bosworth and contains a specific damage clause sufficient to protect plaintiff and other school districts (12% of defaulted amount).

■■ The trial court also cited, in support of the determination to grant

the motion to dismiss, the fact that under section 2—202 of the Local Government and Governmental Employees Tort Immunity Act it is specifically provided that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton negligence." The trial court concluded that the Local Government and Governmental Employees Tort Immunity Act clearly applies to any public employees and to any act or omission by them in the execution or enforcement of any law. (See Ill. Rev. Stat. 1975, ch. 85, par. 2—202. See also *Arnolt v. City of Highland Park*, 52 Ill. 2d 25, 34.) The court also pointed out there was a failure to give notice by plaintiff in accordance with the provisions of that Act prior to the filing of the instant action. The trial court properly concluded that to the extent that the action is based on tortious conduct, it comes within the purview of the Tort Immunity Act to which reference is made by the trial court, and lends further support to the conclusion of the trial court in this case (as to any claimed tortious conduct by the defendants).

Obviously, we are not now determining, in any respect, the propriety of amended counts now pending in the trial court to replace original counts III and IV in the complaint in this case, pursuant to order authorizing such amendment. Plaintiff has obviously acquiesced in the action of the trial court as to counts III and IV since it made a request to amend such counts, which was granted, and has, presumably, filed amended counts seeking to pursue action individually by plaintiff in the trial court.

We have determined, however, that the trial court in the instant case properly dismissed the complaint in this cause based upon plaintiff's attempt to maintain a class action or representative suit.

Some discussion has been initiated in the dissent as to public policy considerations to be given attention in determining the issues in this case. As we note from the statutes, the legislature of this State has established a public policy in providing for action by mandamus to recover for damages occasioned by delays in the distribution of tax moneys. The 12% interest penalty was established as a means of achieving this objective. This appears to be a very effective weapon in the hands of tax spending bodies and can be implemented effectively to achieve the objectives of the legislative provisions. We discern no public policy which would mandate that a trial court should abandon the normal reluctance to sanction class actions where such class actions are unnecessary, such as in the instant case, and invite a potential avalanche of precipitate actions annually, by volunteers, who might initiate class actions in all counties of this State, upon simple recitals such as are contained in the instant case. To give the blessing of the courts to such procedure is hardly consistent with the best interests of the taxpayers, the public officials, or the courts. The statutory provisions are clear and need no specific action in

the form of a mandatory injunction as to procedure under the statutes. Nor does it seem consistent with the precedents to sanction injunctive relief, mandatory in character, commanding public officials (some of whom are not now in office) to adhere to the statutory provisions, which is all that is specifically requested in count I. The statute is clear, and officials who do not adhere to such provisions, render the defaulting county collector vulnerable to recovery of the defaulted amount, together with 12% interest as a penalty.

On consideration of the complaint and the record in this case, therefore, we conclude that the order of the trial court was proper and should be affirmed.

Affirmed.

SCOTT, J., concurs.

Mr. JUSTICE STOUDER, concurring in part and dissenting in part:
I respectfully dissent from portions of the majority opinion of my colleagues for reasons as will appear in succeeding paragraphs. Before discussing the majority opinion as respects the merits of each of the four counts and the class action issue, I believe it is important to consider a preliminary question which is fundamental to the appellate jurisdiction of this court.

My first area of concern relates to the propriety of this court considering counts III and IV on appeal. As stated in the majority opinion, after the trial court dismissed the original complaint, plaintiff requested and was granted leave to amend counts III and IV. Thereafter plaintiff proceeded to file such amendments, a fact which was admitted by plaintiff during oral argument. The record before us on appeal does not contain the amended complaint, nor any ruling by the trial court on it. The record before us was compiled and certified prior to the filing of the amended complaint. Without a ruling on the amended complaint by the trial court, I am at a loss to see how it is proper for a court of review to consider claims which may still be pending in the court below. I believe that with respect to counts III and IV, the judgment appealed from does not possess a sufficiently definite and final character to be appealable under Supreme Court Rule 304(a).

While it is unnecessary under Rule 304(a) that the judgment appealed from be a final order, the action of the trial court must still possess a sufficiently final character to warrant invoking appellate jurisdiction. (*Aetna Casualty & Surety Co. v. Le Pes*, 3 Ill. App. 3d 817, 279 N.E.2d 184.) A judgment or decree is sufficiently final to be reviewable when it terminates the litigation on the merits of the case and determines the

rights of the parties, either upon the entire controversy or upon some definite and separate part of it. (*Lakatos v. Prudence Mutual Casualty Co.*, 113 Ill. App. 2d 310, 252 N.E.2d 123.) But, a finding by the trial court that there is no just reason for delaying enforcement or appeal does not establish or create the requisite finality which must exist before an appeal can be taken. (See *Aetna Casualty & Surety Co. v. Le Pes*, 3 Ill. App. 3d 817, 279 N.E.2d 184.) In light of the amendments to counts III and IV, I believe that apart from the trial court's finding there is no just reason to delay appeal, the finality necessary under Supreme Court Rule 304(a) does not exist.

Neither the parties nor the majority have called my attention to any case where the sufficiency of a complaint to state a cause of action has been before the appellate court pursuant to the interlocutory appeal rule where the trial court has granted permission to amend the very counts with respect to which review is sought. If we affirm the trial court's dismissal, there are no counts to be amended and yet paradoxically, amendments which are not before us are still pending. Under the circumstances, the ruling of this court on counts III and IV is merely advisory. While the majority expresses some reservation about considering counts III and IV, they nevertheless proceed to resolve on the merits the issues regarding those counts. I respectfully disagree that this court should consider counts III and IV pursuant to Supreme Court Rule 304(a). However, since the majority has discussed each of these issues and I disagree with their analysis, I am compelled to set forth my objections.

For the sake of clarity, I must emphasize that each of the counts are stated in terms of an individual cause of action, as well as in terms of a class action. This distinction was not clearly recognized by the trial court nor the majority of this court. It is axiomatic that if no individual cause of action existed, then obviously there could be no class action. Furthermore, even if a class action is improper, the individual action might still be proper. To avoid confusion, it seems to me that the propriety of the individual causes of action should be considered first.

The trial court's decision was based on the defendants' motion to dismiss the complaint. Such motion admitted all facts well pleaded. The gist of these facts as set forth in detail in count I of the complaint describes the failure of various county officials to perform their parts of the tax assessment and collection process at the times required by statute. Such failures are of course admitted by the defendants' motion and present a significant question of whether county officials can and should be required to perform their statutory duties. Although there may well be reasons for excusing the apparent misfeasance of the public officials involved in this case, such reasons may be raised as matters of defense but are irrelevant in determining the initial duty. The tax collection and

disbursement process is so necessary to the efficient functioning of our governmental institutions that deviations from the prescribed process should not be permitted absent clear legislative authority therefore.

Generally speaking, it should be noted that counts I and II seek relief because of the alleged violation of statutory procedures by all of the public officials participating in assessment, levy, extension, collection, and distribution of taxes. These counts do not relate merely to the collector's duties, but to the broader problem of the failure of the entire taxation process. Obviously, the county collector is not responsible for the defaults or misfeasance of other county officials who fail to comply with their statutory duties. Neither the penalty provision of the statute relating solely to the duty of the collector nor the right of action against the collector directly with respect to funds improperly withheld, are appropriate remedies where a broader problem exists, namely, the violation by numerous other public officials of their statutory duties.

In count I, the plaintiff requested that the trial court declare defendants' conduct to be in violation of the State revenue laws and issue a mandatory injunction compelling defendants and their successors to proceed according to statute in forthcoming years. The trial court believed the relief requested by plaintiff would require the court to supervise the assessment and taxing machinery of the county. The trial court dismissed the complaint for failing to state a cause of action in equity against the defendants. While it is not entirely clear what the majority reasons are for affirming the dismissal of count I, it appears their decision is based on the allegedly directory nature of the statutes governing defendants' actions, the impropriety of a court supervising assessment procedures, and the availability of alternate relief in the form of mandamus rather than a mandatory injunction. The reasons implied by the majority fail to provide a sufficient basis for dismissing count I.

The cases and statutes cited by the majority in support of their position that the statutory procedures applicable to defendants are directory and not mandatory, are addressed to situations in which the legal validity of the tax assessment itself is challenged and taxpayers seek to withhold payment of taxes based on an invalid assessment created by the failure to follow prescribed procedures. No claim is made here that the tax assessment or procedures were void, as in the cases cited by the majority. Nor is there any indication in the authority cited by the majority that the taxing officials should not have complied with their statutory duties. I would agree with the rationale of those cases that it is imperative to the framework and operation of local governmental entities that the validity of tax assessments not be jeopardized by the misconduct of a limited number of county officials. Hence, it is proper in cases where the tax assessment is challenged to label the statutes in question as directory. But,

the foundation of plaintiff's count I is of a different character. The statutes which form the basis of count I exist to insure that entities such as plaintiff will not be deprived of the timely distribution of needed tax revenues. The injury plaintiff has sustained is precisely the injury the statutes were designed to prevent. To say that these statutes are directory under the present circumstances and because they are directory, count I fails to state a cause of action, only perpetuates the problem created by the failure of defendants to fulfill their official duties. If, as the majority suggests, mandamus would be an appropriate remedy, it would seem to me that such a position is inconsistent with their reasoning that the duty imposed is merely directory and hence a violation is without legal consequence. Under the facts of this case, the statutes in question should be deemed to describe enforceable duties.

The majority also supports the dismissal of count I by stating that the relief requested would require the court to supervise assessment of property by public officials, which would be contrary to the precedents set forth in *Bistor v. Board of Assessors*, 346 Ill. 362, 179 N.E. 120. I believe *Bistor* should be limited to the facts and circumstances of that case. The magnitude of relief requested in *Bistor* was of such proportions that a court would indeed have "to take charge of and supervise the whole assessment of all the real estate in Cook County," a task which would surely include supervision of discretionary acts. (346 Ill. 362, 372, 179 N.E. 120, 124.) In this case, the machinery of the assessment and taxation process would still be under the control of the proper elected officials. Plaintiff here requests only that defendants perform the ministerial act of complying with the time for assessment and the complimentary procedures. If the municipal bodies have no right to prevent violations of statutory duties, then no effective legal remedy exists. Furthermore, *Bistor* occurred prior to the merger of law and equity or for that matter the existence of declaratory judgments. Any reliance by the *Bistor* court on law-equity distinctions to justify dismissing plaintiff's complaint can no longer be regarded as controlling precedent.

As final support for their decision to affirm the dismissal of count I, the majority claims that plaintiff's remedy is through a writ of mandamus and not via a mandatory injunction. I disagree for two primary reasons. Any contention that plaintiff's complaint must be dismissed because equity has no jurisdiction and plaintiff's relief is through the remedy at law of mandamus, contravenes the 1970 Illinois Constitution and the Illinois Civil Practice Act. The 1970 Illinois Constitution provides that "Circuit Courts shall have original jurisdiction in all justiciable matters * * *." (Ill. Const. 1970, art. VI, § 9.) This language is virtually identical to the language of the 1964 Judicial Article which created the unified trial courts and abolished courts of limited jurisdiction, including separate courts of

law and equity. In view of the merger between law and equity, a trial judge has jurisdiction to grant whatever relief may be appropriate in the circumstances of the case before him. This view is supported by section 34 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 34) which provides that "Except in case of default, the prayer for relief does not limit the relief obtainable * * *." Hence, a complaint cannot be dismissed on the basis that the trial court does not have jurisdiction to grant the relief requested, since it may fashion the relief to fit the particular circumstances of the case before the court. However, even if one recognizes the antiquated and artificial distinctions drawn by the majority, they are nevertheless incorrect in deciding that mandamus is a remedy and the only remedy for the defendants' misconduct.

While mandamus is an extraordinary legal remedy, its issuance is governed by equitable principles. (*People ex rel. Harty v. Gulley*, 2 Ill. App. 2d 321, 119 N.E.2d 540.) The writ is one in personam and not in rem, acting directly upon the person of the officer and coercing him to do a plain duty. The writ does not reach his office, nor can it be directed to the office. (See *Territory of New Mexico ex rel. Caledonian Coal Co. v. Baker*, 196 U.S. 432, 49 L. Ed. 540, 25 S. Ct. 375.) It is in no sense a preventive remedy and will normally not issue unless there has been an actual default by the officer of an established duty. (*People ex rel. Heydenreich v. Lyons*, 374 Ill. 557, 30 N.E.2d 46, 132 A.L.R. 511.) In instances where there is only threatened or anticipated omission to act, injunction and not mandamus is the appropriate remedy. (52 Am. Jur. 2d *Mandamus* § 9 (1970).) Where it appears that the issuance of the writ will be of no substantial or practical benefit and constitute an unavailing or useless act, the writ will be denied. (*Retail Liquor Dealers Protective Association v. Schreiber*, 382 Ill. 454, 47 N.E.2d 462. See *People ex rel. Brecheisen v. Board of Review*, 363 Ill. 106, 1 N.E.2d 402.) In count I of this action, plaintiffs seek to prevent further irreparable injury to themselves in forthcoming years because of an anticipated violation of the revenue laws by the defendants. Since a writ of mandamus will not issue to correct future wrongs, mandamus can not be the appropriate remedy for plaintiffs to pursue. Any attempt to correct the defendants' past failures to comply with the statute would be of no practical benefit and therefore the writ would not issue. In *Menard v. Hood*, 68 Ill. 121, our supreme court said: "[T]he writ of injunction is only called into use to afford preventive relief. It is never employed to give affirmative relief, or to correct wrongs and injuries already perpetrated, or to restore parties to rights of which they have been deprived." (68 Ill. 121, 122.) Hence, it would appear the only relief plaintiff has to prevent the reoccurring violations by defendants of their statutory duties is by way of an injunction directing whomever holds the office now occupied by

defendants to comply with the applicable revenue laws. While I would prefer to avoid drawing any artificial and unjustified distinctions between law and equity in determining what should be plaintiff's relief and instead implement the constitutional merger of law and equity, when those distinctions are considered and properly applied, injunction and not mandamus is the appropriate remedy.

Count II of the complaint seeks recovery of $500,000 in monetary damages incurred by the 46 school districts in Will County because the school districts had to borrow money to meet operating expenses when defendants' tardy compliance with the statutes did not produce the anticipated tax revenues on schedule. The trial court dismissed count II for failing to state a cause of action and because of the applicability of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1975, ch. 85, par. 1—101 *et seq.*). The majority does not indicate to which counts it believes the Local Governmental and Governmental Employees Tort Immunity Act applies, choosing instead to hold the Act applicable "as to any claimed tortious conduct by the defendants."

An examination of plaintiff's brief reveals no assignment of error or discussion related thereto concerning the trial court's holding that the Tort Immunity Act barred recovery on this count of the complaint. I believe plaintiff has waived consideration of any error resulting from the court's ruling. Consequently, any discussion of the court's ruling of the applicability or inapplicability of the Tort Immunity Act is beyond the scope of the issues presented for review. Being unnecessary to a decision in this case, I neither agree nor disagree with the reasons of the majority of the court on this issue. I agree that the trial court's action in dismissing count II should therefore be affirmed.

With respect to the remaining counts of the complaint, I believe the Tort Immunity Act has no application, either because the relief does not request monetary damages (counts I and III) or the monetary damages requested are expressly authorized by statute (count IV). The Tort Immunity Act was never intended to shield public officials from their failure to perform statutory obligations. With respect to count IV, *People v. Meyerowitz*, 61 Ill. 2d 200, 335 N.E.2d 1, would appear to be ample authority to indicate that the recovery sought is not barred by the Tort Immunity Act, since as in the *Meyerowitz* case, the nature of the plaintiff's action is similar to an action for monies had and received.

With respect to count III, I believe the trial court and the majority are incorrect in deciding that mandamus is the only remedial measure available to curb defendant Bosworth's unlawful practice of withholding excessive amounts of money from distribution. In deciding that count III was improperly dismissed, I would prefer to adhere to the same

reasoning used in discussing count I, namely, that under our unified court system where the circuit court has original jurisdiction over both law and equity, a complaint should not be dismissed because a form of relief at law is more appropriate than the equitable relief requested. In formulating the terms of a decree, a trial court can consider what type of relief is best suited to the circumstances of the case. However, I also believe that an injunction is the correct relief available for the facts alleged in count III.

Injunction is the appropriate remedy when there is an excess of action to be restrained. (*Ehrlich v. Village of Wilmette*, 361 Ill. 213, 197 N.E. 567. See also Gray, *Injunctions and Receiverships*, 1954 U. Ill. L. F. 68.) Here, if the facts are as alleged in the complaint, defendant Bosworth has exceeded the scope of his lawful authority by withholding excessive sums of money from distribution to plaintiff. The primary relief sought is not concerned with the defendants' past actions, but relates to his conduct in future years. Mandamus does not issue until there has been an actual default of a known duty and does not issue to the office, but rather to the person. As such, an injunction restraining defendant Bosworth from withholding excessive amounts from distribution is the proper remedial measure. Such a view is supported by *People ex rel. Hopf v. Barger*, 30 Ill. App. 3d 525, 332 N.E.2d 649.

Plaintiff in *Hopf* filed an action for mandamus to order certain elected officials to comply with the Open Meetings Act (Ill. Rev. Stat. 1975, ch. 102, par. 41 *et seq.*). On its own motion, the appellate court considered whether mandamus was the appropriate remedy. After referring to cases stating that a writ of mandamus would not issue to compel a useless act or regulate the general course of official conduct, the court decided that mandamus was not the appropriate remedy. Nevertheless, the court found that even where a petition for mandamus becomes moot, it does not necessarily follow that the cause should be dismissed when the issues presented are of substantial public interest. The court concluded that when the substance of the petition was emphasized over its form, the case was an appropriate one for the consideration of declaratory or injunctive relief. The present case deals with similar issues and declaratory and injunctive relief is the proper remedy. Other cases offer additional support for such a conclusion.

In *City of Joliet v. Bosworth*, 64 Ill. 2d 516, 356 N.E.2d 543, declaratory and injunctive relief was awarded to the City of Joliet to prevent the defendant from continuing collection of unlawful charges for the costs of the county collecting taxes. In *Flanagan v. City of Chicago*, 311 Ill. App. 135, 35 N.E.2d 545, the city withheld from distribution a surplus in a special assessment fund in violation of State law. The court found that while the remedy of mandamus might be available, it would not afford

complete relief and the complaint was subject to equitable jurisdiction. The mere fact that a complaint has a remedy at law does not deprive the court of equitable jurisdiction if that remedy at law is inadequate. In this case, to insure complete relief, it is essential that the decree guard against future violations by the defendant Bosworth and only an injunction can provide the necessary prophylactic effect.

The majority indicates that if the collector fails in his duty to distribute, the remedial measure set forth in section 17—15 of the School Code (Ill. Rev. Stat. 1975, ch. 122, par. 17—15) and which is the basis for count IV of the complaint, establishes the only remedy for the failure of the collector to perform his duty. While the monetary damages set forth in section 17—15 do afford a measure of relief, the statute does not purport to be the sole and exclusive remedy and this court should not so hold without an express intention by the legislature. The penalty imposed by section 17—15 of the School Code is an additional incentive for the collector to perform his duties. The statutory remedy as set forth in count IV is and should be deemed complimentary to the relief requested in count III. There is nothing inconsistent in the relief sought in each count even though such relief may relate to the same breach of duty. As such, I believe that count III as pleaded in the original complaint states a valid cause of action.

In count IV plaintiff sought to recover the statutory penalty provided by section 17—15 of the School Code for the failure of a collector to perform his duty to distribute. The trial court originally dismissed this count holding that only the school treasurer may bring an action under section 17—15 of the School Code.

Section 17—15 states in part that "the school treasurer or other authorized person may proceed" against the collector. I believe that "other authorized person" includes any official or recognized local governmental body which is directly affected by the collector's default. It cannot be disputed that plaintiff, as a direct distributee of tax monies collected by defendant, falls within such a rule. Count IV states a valid cause of action.

It should be noted that the majority opinion does not discuss the trial court's ruling on count IV in specific terms. The majority appears to believe that the statutory action is an applicable one not barred by the Tort Immunity Act even though there are portions of the opinion which suggest that all claims of the plaintiff are barred by that Act. I do not believe that the equity-law dichotomy proposed by the majority sufficiently responds to the issues raised by counts III and IV, which I have previously indicated are complimentary and should be considered together.

My remaining objection concerns the majority's holding that this complaint can not proceed as a class action. I have discussed the

plaintiff's individual causes of action first since before a class action can be maintained, an individual must establish his own cause of action and that his claim is typical and representative of the claims of the other members of the class as a whole. I believe that the plaintiff Board of Education should be allowed to maintain this suit as a class action, as to counts I, III and IV. As I indicated earlier, I find no reason for disturbing the trial court's ruling dismissing count II as applied to plaintiff individually.

The basic criteria of a class action is a community of interests in a subject matter and the remedy. (*Dee-El Garage, Inc. v. Korzen*, 53 Ill. 2d 1, 289 N.E.2d 431.) Community of interest means identity of causes of action and has been described as either identity of rights (*Smyth v. Kaspar American State Bank*, 9 Ill. 2d 27, 136 N.E.2d 796) or identity of issues (*Dee-El Garage, Inc. v. Korzen*, 53 Ill. 2d 1, 289 N.E.2d 431). Without embarking upon a lengthy analysis, suffice it to state that I believe that community of interests exists in this case and a class action is the best means of insuring that the interests of all school districts in Will County are protected and the defendants do not bear the risks of inconsistent judgments that would occur if 46 separate actions were brought.

The majority rely on this court's decision in *Reardon v. Ford Motor Co.*, 7 Ill. App. 3d 338, 287 N.E.2d 519, for support of its position that numerosity of parties and similarity of claims is not alone sufficient to support a class action in Illinois. The facts in *Reardon* distinguish it from the present case. *Reardon* was a suit brought on behalf of all the owners of a certain year and model Ford automobile. Estimates as to the size of the class ran into the millions and the residency of the individual members of the class encompasses many of the 50 States. I would agree that a class comprised of 4,000,000 members is unmanagable and even though the individual members' claims are similar, a court, in the exercise of its discretion, should refuse to allow such a suit to proceed as a class action. This is not the case here. Indeed, while quoting at length from *Reardon*, the majority hold that the number of individual school districts in Will County is not so large as to render separate litigation in the courts of the county impossible or impractical. Without debating with the majority on a strictly numerical basis, I believe 46 is a sufficiently large group of possible plaintiffs to justify use of the class action proceeding. Such a view is further supported by the fact that the issues and relief presented in counts I and III are not just similar, they are identical, thereby creating the distinct possibility that defendant would suffer inconsistent judgments if 46 separate actions were commenced.

The majority also reasons that a class action is inappropriate because the "claims would be based on numerous separate and distinct transactions (as to payments, assessments and protests)." Such a statement

is contrary to established precedent. In *Flanagan v. City of Chicago*, 311 Ill. App. 135, 35 N.E.2d 545, suit was brought on behalf of 5,078 assessees of a special assessment to recover a surplus remaining in a special assessment fund. The amount each individual plaintiff would recover was based upon the amount of the original special assessment, the amount paid under the original special assessment, and the individual assessee's pro rata share of the surplus. The court held that the plaintiff had a clear right to institute and maintain the proceeding as a class suit.

The dominant issue in this case does not relate to amounts, but whether defendants have failed to comply with State laws and the difference in monetary amounts which may be recovered by each individual plaintiff should not bar class action status. The language of our supreme court in *Fiorito v. Jones*, 39 Ill. 2d 531, 236 N.E.2d 698, aptly expresses this concept.

> "So also, in view of this dominant issue, the differences which defendants contend exist between members of the class with respect to their right and amount of recovery from the fund are not sufficient to bar the instant action. We therefore hold that the maintenance of the class action here was proper." (39 Ill. 2d 531, 544, 236 N.E.2d 698, 706.)

I would hold that the suit is maintainable as a class action as to all counts where plaintiff has established a right to proceed individually.

Nothing has been said thus far by either the majority or myself about certain overriding considerations which pervade every aspect of this case, considerations which should be weighed along with all others in deciding the merits of plaintiff's claims and in the final outcome, must tip the scales in plaintiff's favor. Those considerations are ones of public policy. The legislature has enacted broad comprehensive legislation governing virtually every aspect of taxation. Those laws are there in part to insure the orderly and timely imposition, collection and distribution of needed tax revenues. The public has the right to expect compliance by the respective public officials with the laws that prescribe and govern their duties of office. While the 46 individual school districts of Will County are the ones who suffer the direct consequences of the respective defendants' actions or inactions, it is the public at large who must bear the cost of defendant's abdication of their official responsibilities. In the face of such considerations, I cannot join with my brethren completely in affirming the trial court and I respectfully dissent.